UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DONALD GRUMBINE,  )  CIVIL ACTION NO. 4:20-CV-433
       Plaintiff  )
         )
    v.  )
         )  (ARBUCKLE, M.J.)
ANDREW SAUL,  )
       Defendant  )

MEMORANDUM OPINION

## I.  INTRODUCTION

Plaintiff Donald Grumbine, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, this case will be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) to conduct a new administrative hearing.

## II. BACKGROUND & PROCEDURAL HISTORY

On July 12, 2016, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 19; Doc. 11-2, p. 20). In these applications, Plaintiff alleged he became disabled as of August 3, 2013, when he was 37 years old, due to the following conditions: anxiety, post-traumatic stress disorder, chronic depression, bipolar disorder, degenerative and bulging discs, panic attacks, and social anxiety. (Admin. Tr. 304; Doc. 11-8, p. 7). Plaintiff alleges that the combination of these conditions affects his ability to talk, remember/memorize, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 341; Doc. 11-18, p. 43). Plaintiff has at least a high school education. (Admin. Tr. 29; Doc. 11-2, p. 30). Before the onset of his impairments, Plaintiff worked as a highway maintenance worker. (Admin. Tr. 29; Doc. 11-2, p. 30).

On December 27, 2016, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 19; Doc. 11-2, p. 20). On the same day, Plaintiff requested reconsideration. (Admin. Tr. 216; Doc. 11-6, p. 16).

On May 15, 2017, Plaintiff's applications were denied on reconsideration. (Admin. Tr. 220; Doc. 11-6, p. 20). On July 13, 2017, Plaintiff requested an administrative hearing. (Admin. Tr. 19; Doc. 11-2, p. 20).

On October 19, 2018, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Daniel Balutis (the "ALJ"). (Admin. Tr. 30; Doc. 11-2, p. 31). On December 24, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. *Id.* On February 8, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 12; Doc. 11-2, p. 13).

On January 22, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 11-2, p. 2).

On March 13, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶ 5). As relief, Plaintiff requests that the Court reverse the final decision of the Commissioner, or in the alternative remand this matter to the Commissioner to conduct a new administrative hearing. (Doc. 1).

On August 25, 2020, the Commissioner filed an Answer. (Doc. 10). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 10, ¶ 8). Along with her

Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 14), the Commissioner's Brief (Doc. 15), and Plaintiff's Reply (Doc. 16) have been filed. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and

the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

> B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
> SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on December 24, 2018.

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 2 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work

experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raises the following issue in his statement of errors:

(1)   The ALJ committed reversible error in failing to weigh the opinion of Dr. Ruddock as required by 20 C.F.R. § 404.1527(c).

(2)   The ALJ's rejection of Dr. Yared's opinion regarding interaction with supervisors and peers is unreviewable as the ALJ provided no basis for such a rejection.

(3)   The ALJ's rejection of Dr. LaJeunesse's opinion is not supported by substantial evidence as the ALJ ordered a consultative examination

only to reject the opinion on the basis that the examination was a one-time observation of the claimant.

(4)     The ALJ's residual functional capacity is not supported by substantial evidence as it ostensibly rejects all medical opinions of record pertaining to Plaintiff's mental limitations in violation of *Doak v. Heckler*; the ALJ erroneously substituted his opinion for that of a medical one.

(Doc. 14, pp. 9-10).

## A. THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his December 2018 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through June 30, 2017. (Admin. Tr. 21; Doc. 11-2, p. 22). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between August 3, 2013 (Plaintiff's alleged onset date) and December 24, 2018 (the date the ALJ decision was issued) ("the relevant period"). *Id*. At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: major depressive disorder, social anxiety disorder, post-traumatic stress disorder, panic disorder, migraines and obstructive sleep apnea. *Id*. Also at step two, the ALJ found that the medical record supported the existence of the following medically determinable non-severe impairments: obesity, gastroesophageal reflux disease, and allergic rhinitis. (Admin. Tr. 22; Doc. 11-2, p. 23). At step three, the ALJ found that, during the relevant

period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) and 20 C.F.R. § 416.967(c) subject to the following additional limitations:

> The claimant is able to perform simple, routine, repetitive tasks. He is able to perform simple work-related decisions. He is able to have frequent interaction with supervisors and co-workers. He is able to have occasional interaction with the public. The claimant is able to tolerate occasional changes in a routine work setting. In consideration of the claimant's concentration issues, his time off task can be accommodated by normal breaks.

(Admin. Tr. 23; Doc. 11-2, p. 24).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 29; Doc. 11-2, p. 30). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. *Id*. To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: dishwasher (DOT #318.687-010), cleaner (DOT #381.687-018), packager (DOT #920.587-018). (Admin. Tr. 30; Doc. 11-2, p. 31).

B.  WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINIONS
    ABOUT PLAINTIFF'S MENTAL IMPAIRMENTS

Two State agency psychological consultants issued opinions in this case. On September 29, 2016, in connection with the initial review of Plaintiff's applications, state agency psychological consultant Maxine Ruddock ("Dr. Ruddock") completed a psychiatric review technique ("PRT") assessment and a mental RFC assessment. Then, on May 14, 2017, in connection with the review of Plaintiff's applications on reconsideration, state agency consultant Thomas Yared, M.D. completed a PRT and mental RFC assessment. A third medical opinion was issued about Plaintiff's mental impairments in October 2018, by consultative examiner Charles LaJeunesse, Ph.D.

All three of these psychologists concluded that Plaintiff would have certain deficits in social functioning.

Doctors Ruddick and Yared agreed that Plaintiff would have "moderate" difficulties interacting with co-workers, supervisors, and the general public. A "moderate" limitation means that an individual has "fair" ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00F2. Doctors Ruddick and Yared concluded that Plaintiff "appears capable of meeting the mental demands of work comprised of simple routine tasks carried out *in a setting where contact with the public, coworkers, and supervisors is typically infrequent, brief, and superficial*." (Admin. Tr. 146, 181; Doc. 11-5, pp. 16, 51) (emphasis added).

Dr. LaJeunesse assessed that Plaintiff would have "marked" difficulty interacting with co-workers, supervisors, and the general public. A "marked" limitation means that an individual is "seriously limited" in his or her ability to function independently, appropriately, effectively, and on a sustained basis. *Id.*

In his decision, the ALJ discounted the social limitations assessed by each of these psychologists, and concluded that Plaintiff was not as limited in social settings as these physicians thought. In doing so, the ALJ only discussed two of the opinions, and ignored the third.

The ALJ provided the following explanation in support of his decision to discredit the social limitations assessed by Doctor Yared:

> The Psychiatric Review Technique Form completed by the Disability Determination Service non-examining consultant, Thomas Yared, M.D., indicated that the claimant has medically determinable impairments of depressive, bipolar and related disorder, anxiety and obsessive-compulsive disorders. Dr. Yared determined that the claimant had mild restriction understanding, remembering or applying information; moderate difficulties interacting with others; moderate difficulties in maintaining concentration, persistence, or pace and mild difficulties adapting or managing oneself (Exhibit 6A/10).

> On the Mental Residual Functional Capacity Assessment, Dr. Yared found the claimant moderately limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. The claimant is moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them and he is moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The

claimant is moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting and set realistic goals or make plans independently of others (Exhibit 6A/12).

The undersigned Administrative Law Judge gives partial weight to the opinions of Dr. Yared, the Disability Determination Services consultant, on the Psychiatric Review Technique Form and the Mental Residual Functional Capacity Assessment (Exhibit 6A/10, 12). ***The undersigned finds the claimant less limited in his interaction with supervisors and peers by finding he can have frequent interaction with supervisors and co-workers.*** The undersigned also agrees that claimant can tolerate few changes in the work setting.

(Admin. Tr. 28; Doc. 11-2, p. 29) (emphasis added).

The ALJ provided the following explanation in support of his decision to discount the social limitations assessed by Dr. LaJeunesse:

Charles LaJeunesse, Ph.D. consultatively examined the claimant on October 17, 2018. The claimant had no psychiatric hospitalizations. The mental status examination found him cooperative with adequate social skills. His eye contact was appropriate and his speech was fluent. He had adequate expressive and receptive language skills. His thought process was coherent and goal directed with no evidence of hallucinations, delusions or paranoia. His had euthymic mood and his affect was full range. His attention and concentration were intact but his memory was impaired. His intellectual functioning was below average. He had fair insight and judgment. His diagnoses are bipolar I disorder, social anxiety disorder, panic disorder with agoraphobia and posttraumatic stress disorder (Exhibit 29F).

Dr. LaJeunesse opined on the medical source statement that the claimant has mild limitations in his ability to understand, remember and carry out simple instructions and make judgments on simple work-related decisions. He has moderate limitations in his ability to understand, remember and carry out complex instructions and make

judgments on complex work-related decisions. Dr. LaJeunesse opined that the claimant has marked limitations in his ability to interact appropriately with the public, supervisors and co-workers and respond appropriately to usual work situations and changes in a routine work setting because he is learning disabled and socially phobic and his wife does most of his activities of daily living (Exhibit 29F).

The undersigned Administrative Law Judge gives partial weight to the opinions of Dr. LaJeunesse on the medical source statement. The undersigned gives weight to the mild and moderate limitations in understanding, remembering and carrying out instructions but *little weight is given to the marked limitations in social functioning since it is not consistent with the evidence in the record or his mental status examination findings.* It must be noted that Dr. LaJeunesse is not a treating source of the claimant. Dr. LaJeunesse is relying solely and exclusively on one observation made on the day of the consultative examination and not upon objective long-term observations and experiences with the individual.

(Admin. Tr. 26; Doc. 11-2, p. 27) (emphasis added).

Ultimately, the ALJ concluded that Plaintiff would be able to tolerate "frequent" interaction with supervisors and co-workers. In this context "frequent" interaction means that Plaintiff would be expected to interact with supervisors and coworkers for up to six hours per eight-hour workday. *See* SSR 83-10, 1983 WL 31251 (defining "frequent" as "occurring from one-third to two thirds of the time" or "approximately 6 hours of an 8-hour workday.").

Plaintiff argues that the ALJ's decision to reject the opinions about Plaintiff's tolerance for interaction with supervisors and co-workers was not properly explained, and is not supported by substantial evidence. The Commissioner disagrees.

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 416.927(a)(2) (same as 20 C.F.R. § 404.1527(a)(2)); 20 C.F.R. § 404.1527(c)(2) (explaining what is required for a source's opinion to be controlling); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. §404.1527(c)(2)).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for

the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c); 20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. § 404.1527(c)(2)). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

1.      Whether the ALJ Considered Dr. Ruddock's Opinion

In his brief, Plaintiff argues that the ALJ failed to properly apply 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c) (requiring the ALJ to consider every medical opinion) to his evaluation of Dr. Ruddock's opinion. In his brief, the Commissioner concedes that the ALJ did not consider Dr. Ruddock's opinion in his

decision. Based on my own review of the ALJ's decision, I find that there is nothing in the ALJ's decision that suggests it was given any consideration by the ALJ.

> 2. Whether the ALJ Explained Why the Social Limitations Assessed by Doctors Yared and LaJeunesse Were Rejected

In his brief, Plaintiff argues that the ALJ failed to properly cite to evidence in support of his conclusion that Plaintiff could tolerate "frequent" interaction with co-workers and supervisors and failed to explain or cite any evidence inconsistent with the two psychologists' opinions that were addressed in the decision.

In the paragraph discounting Dr. Yared's assessment that Plaintiff would have "moderate" difficulty interacting with co-workers and supervisors and the assessment that Plaintiff could tolerate a "setting where contact with the public, coworkers, and supervisors is typically infrequent, brief, and superficial," the ALJ does not cite to any evidence that is inconsistent with Dr. Yared's opinion.

In the paragraph discounting Dr. LaJeunesse's assessment that Plaintiff would have "marked" difficulty interacting with co-workers and supervisors, the ALJ cited to one piece of evidence. The ALJ referenced Dr. LaJeunesse's mental status examination as "inconsistent" with a "marked" social limitation. The mental status examination at issue describes Plaintiff as "cooperative," and states that Plaintiff's "manner of relating, social skills, and overall presentation," were "adequate." (Admin. Tr. 1496; Doc. 11-23, p. 55). This mental status examination alone, is not enough to support the ALJ's decision to discount three medical opinions or to

support the ALJ's conclusion that Plaintiff is capable of "frequent" interaction with co-workers and supervisors.

The Commissioner suggests that, the record contains ample evidence supporting the ALJ's RFC assessment. I have reviewed the ALJ's decision, and the ALJ did not devote any significant discussion to the issue of social functioning in the section explaining the RFC assessment. Although he did summarize Plaintiff's history of mental health treatment, nothing in this summary provides any insight into Plaintiff's ability to interact with co-workers and supervisors in a work-like setting. (Admin. Tr. 23-29; Doc. 11-2, pp. 24-30).

At step three, when addressing Plaintiff's ability to interact with others, the ALJ noted that:

> In interacting with others, the claimant has a moderate limitation. The claimant is married and has children ages 4 months, 3 years old, 4 years old, and 6 years old. He has social anxiety issues. He has no friends but he gets along with his wife and his kids, but not his extended family (Exhibit 29F). The claimant has been fired or laid off from a job because of problems getting along with other people (Exhibit 5E/11). He is afraid of people and fears people staring or making fun of him (Exhibit 5E/8). He cannot remember the last time he was in a grocery store.

(Admin. Tr. 22-23; Doc. 11-2, pp. 23-24).

In support of this position that there is "ample" evidence to support the ALJ's rejection of the medical opinions at issue, the Commissioner cites to a series of treatment records, which he contends, note normal behavior and no deficits in

interaction or communication. (Doc. 15, p. 10) (citing Tr. 22-23, 27, 463, 475, 484, 494, 504-05, 511-12, 518, 523, 560, 578, 594, 615, 639, 658, 691, 703, 728, 735, 756, 764, 776, 832, 920, 935, 961, 982, 1002, 1186, 1229, 1237, 1242, 1247, 1278, 1304, 1325, 1345, 1459, 1464, 1469, 1475, 1495, 1496, 1505). However, an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision;' the Commissioner may not offer a post-hoc rationalization." *Keiderling v. Astrue,* No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May, 20, 2008) (quoting *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000)). Although the documents cited by the Commissioner were part of the administrative record in this case, the ALJ did not discuss them in the context of Plaintiff's ability to interact with others in the workplace or discuss whether he relied on them. Absent such discussion, the Court is not in a position to assess what weight or consideration these notes were given. To rely on these notes as substantial evidence would not be appropriate given the well-established principle prohibiting post-hoc justifications.

An ALJ has an obligation to indicate that he or she "has considered all the evidence," and provide a reason why she or he has "rejected probative evidence which would have suggested a contrary disposition." *Cotter v. Harris,* 650 F.2d 481, 482 (3d Cir. 1981). This obligation does not require the ALJ to "supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Id.* However, considering the ALJ's

decision as a whole, and the supporting explanation provided, I find that the ALJ has not met his obligation to explain with respect to his evaluation of the social limitations assessed by Doctors Yared and LaJeunesse.

> 3.  Whether the ALJ's Errors Evaluating the Medical Opinions of Doctors Ruddock, Yared, and LaJeunesse is Harmless

Last, the Commissioner argues that remand is not required because the result in this case would have been the same even if these three opinions were credited. Specifically, he argues that the VE testified that Plaintiff could perform a significant number of jobs even if the ALJ had limited Plaintiff to "occasional" interaction with co-workers and supervisors, and that each of the jobs enumerated by the ALJ have the lowest possible "people" rating. (Doc. 15, p. 9). I disagree.

The relevant VE testimony from Plaintiff's administrative hearing has been reproduced below:

> Q  I have two hypotheticals for you. For the purposes of these hypotheticals, I would like you to assume an individual the same age, vocational background, education as the claimant. Hypothetical 2 will build from Hypothetical No. 1.
>
> For my first hypothetical, I would like for you to assume an individual restricted to a medium exertional level with the following additional restrictions:
>
> This individual will be restricted to performing simple, routine, and repetitive tasks. Regarding the use of judgment, they'd be limited to simple, work-related decisions. They would have frequent contact with supervisors and coworkers and only occasional—I'm sorry—frequent contact with supervisors, coworkers; occasional contact with the public.

There would be occasional changes in the routine work setting. And if off task can be accommodated by normal work breaks.

A        Okay.

Q        Just one moment.

A        Uh-huh.

Q        Based upon this hypothetical, would this person be able to perform any of the claimant's past work?

A        Based on this hypothetical, the past work would apply to that hypothetical as performed and as per the DOT, Judge.

Q        Okay. I'm sorry. I didn't hear you. Are you saying that past work can be performed?

A        Yes. That's what I said, Judge.

Q        Okay, I'm sorry. Let me—I guess—this was semi-skilled work and SVP 3.

A        Oh. I apologize. I apologize. That's my error. No. It would be precluded. I apologize, Judge.

Q        Is there any work available in the national economy that this hypothetical individual could perform?

A        Yes, Judge. One moment, please.

         Based on this hypothetical, we're looking at work that's described as medium and would be unskilled. Representative examples—one representative example, a dishwasher position, described in the DOT as medium and unskilled with an SVP of 2. National numbers are 506,000. And DOT would be 318.687-018.

         And a third would be packager. Medium, unskilled with an SVP of 2. National numbers of 705,000. Pennsylvania—I'm sorry. A DOT would be 920.587-018.

Q       For my second hypothetical, I would like for you to assume Hypothetical No. 1 with the following additional changes and restrictions:

The first change is this individual will only be able to perform simple, routine repetitive tasks but not at a production rate pace, such as what occurs on an assembly line. This person would only have occasional contact with supervisors, and there would be no contact with coworkers or the public.

And in addition to normal breaks, this individual would be off task 15 percent of the time of an eight-hour work day.

Based upon these changes, would this person be able to perform any of the claimant's past work.

A       No, sir.

Q       Based upon these changes, is there any work available in the national economy?

A       No, there would not be.

Q       Could you explain why not?

A       Yes, Judge. In regards to Hypothetical No. 2, there would be, in a work setting, at least occasional interaction with coworkers. Secondly, in regard to 15 percent off-task time, based on that, Judge, an employer really would not tolerate someone being off task for that significant period of time during the work day. Therefore, I believe there would be no work for such a person.

Q       Would it be fair to say wither the off-task time or the restrictions regarding interactions with coworkers and the public, in and of themselves, would be work preclusive? Correct?

A       Yes.

(Admin. Tr. 92-95; Doc. 11-3, pp. 57-60).

To the extent the Commissioner argues that this testimony would be enough to deny benefits if Plaintiff was limited to only occasional interaction with supervisors and co-workers, I disagree.

First, I note that the Commissioner's argument assume that a limitation to "occasional" contact is consistent with all three opinions. It is not clear whether that is the case.

Second, the ALJ did not pose any hypothetical limiting Plaintiff to occasional interaction with supervisors, co-workers and the general public. Instead, the ALJ's second hypothetical limited Plaintiff to occasional interaction with supervisors and no contact with co-workers or the general public. Although the VE testified that there would always be occasional interaction with co-workers, the VE did not identify representative occupations or the necessary statistics to support a finding that there would be a significant number of jobs in the national economy if Plaintiff were limited to only occasional contact with supervisors, co-workers, and the public. Thus, the testimony provided in this case would not be enough to support a decision at step five.

Accordingly, I find that remand is appropriate here because Dr. Ruddock's opinion was not considered, the rejection of the opinions by Doctors Yared and LaJeunesse were not properly explained. These failures are not harmless in this case

because the vocational testimony was not sufficiently developed to show that the result in this case would be the same even if all three opinions were credited.

## V.     CONCLUSION

Based on the reasons explained herein, Plaintiff's request for a new administrative hearing is GRANTED as follows:

(1) The final decision of the Commissioner is VACATED.

(2) This case should be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment will be issued in favor of Donald Grumbine.

(4) An appropriate order shall issue.

Date: July 6, 2021                                     BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge